# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23246-Civ-ZLOCH/TORRES

FULVIO JOSE QUEZADA,

        Plaintiff,

vs.

SANTE SHIPPING LINES, INC., et al.

        Defendants.

_____/

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment ("motion") [D.E. 53].[1]  The Court has reviewed the motion, response, reply, the relevant authority, and the record evidence submitted in support of or in opposition to the motion.  Based upon a thorough review of the record, the motion is Granted in Part and otherwise Denied.

## I.  BACKGROUND

This case was filed by Plaintiff Fulvio Quezada for unpaid overtime under the Fair Labor Standards Act and unpaid wages/commissions under Florida law.  The Defendants are four companies, Sante Shipping Lines, Inc. ("Sante"), Public Mobile Storage, LLC ("Public Mobile"), Port of Miami River Terminal, LLC ("Port of Miami"), and Action Rentals, LLC ("Action Rentals") (collectively "Defendants").  Plaintiff also

_____

[1]    The motion was referred for disposition by the District Judge [D.E. 127] following the parties' consent to Magistrate Judge disposition of all pending motions [D.E. 125, 126].

sued an individual defendant, Bruno Ramos ("Ramos") who is alleged to be the ultimate owner and operator of all these entities operating a common joint enterprise for FLSA purposes.  Plaintiff also sued Defendant Sante with respect to alleged unpaid bonuses and commissions owed to him that have not yet been paid following his termination.

Defendants have raised a series of defenses to the claim, both with respect to FLSA coverage, Plaintiff's status as an independent contractor and exempt manager, and Plaintiff's failure to show that any overtime or other unpaid wages are owed.  The record, in the light most favorable to the non-moving party, shows that Plaintiff was hired (following prior employment in the freight and trucking fields) by Defendant Port of Miami on or about January 4, 2010.  [D.E. 58-1 at 10 ¶¶3-4].  Port of Miami is in the business of cargo terminal operations on the Miami River and is owned by Defendant Ramos and his wife, Maritza Ramos.  [*Id.* at 11 ¶¶6-7].

Maritza Ramos hired Plaintiff on a temporary probationary basis on behalf of Port of Miami, but for work to be performed at a different entity, Defendant Action Rentals (a separate entity owned by Defendant Ramos, Maritza Ramos, Steve Ramos, and John Colao).  Defendant Port of Miami paid Plaintiff's wages for his work at Action Rentals where he worked the front desk in connection with Action Rentals' separate business as a rental company leasing equipment, moving trucks and rental space for customers on the Miami River.  Plaintiff worked under an employee lease agreement between these two Defendant entities, with Action Rentals reimbursing Port of Miami for the compensation paid to Plaintiff.  Plaintiff was never on Action Rentals' payroll

during this time period.  [*Id.*]  Action Rentals claims that Plaintiff acted as more than a front desk "attendant" as he alleges; instead, Action Rentals avers that Plaintiff was actually an assistant manager for Action Rentals, and was fully paid for that position (including through commissions). [*Id.* at 16 ¶¶5-8].

Shortly after Plaintiff's employment by Port of Miami (for the benefit of Action Rentals) began, Plaintiff began working part-time for another Ramos entity – Defendant Public Mobile.  After working at Action Rentals from 8 a.m. to 4 p.m. during the week, Plaintiff took a "second job" with Public Mobile at its nearby facility, working from 4 p.m. to closing time and on Saturdays. [*Id.* at ¶5].  Plaintiff was the assistant manager/night manager on duty at the Public Mobile facility, supervising its storage operations for customers who needed access to their storage after regular business hours.  Public Mobile had its own yard space, storage area, and service area, separate from Action Rentals.  Admittedly, though, these two entities shared the same ultimate manager – Steve Ramos.

Nevertheless, Plaintiff's employment at Public Mobile was separate and apart from the work he performed at Action Rentals (and paid for by Port of Miami).  This arrangement continued for a little over one year (through March 2011), during which period Plaintiff was always paid his wages and commissions, which did not include any overtime for either entity because he never worked more than 40 hours per week for his first or second jobs.

Plaintiff claims, however, that this work arrangement was not of his choosing.  Instead, Plaintiff was hired by Port of Miami but assigned to work the front desk

3

counter at Action Rentals during the regular working day. After 4 p.m., he was instructed to work the counter at the Public Mobile storage facility at night and on weekends. Plaintiff thus alleges that combined he worked far more than 40 hours per week for this Ramos-owned enterprise, and as much as 72 hours during many weeks, without receiving overtime pay. He testified that he had no choice in that decision because he needed the job and this was how his employer structured the position.

In any event, there is no dispute that Plaintiff received W2 wages from Port of Miami during this period, but he received 1099 wages from Public Mobile. Public Mobile's manager, Steve Ramos, testified that this arrangement was done at Plaintiff's behest, including the method of payment through a 1099 rather than withheld wages. Indeed, Public Mobile takes the position that Plaintiff was at all times not an employee but an independent contractor given the temporary nature of the position and the fact Plaintiff controlled his own hours and often ran the business without supervision. Steve Ramos concedes, however, that only he exercised daily control over Public Mobile's operations, he was the one who trained Plaintiff, he was the one who set employment conditions for the company, including recruiting, hiring and firing employees, setting pay rates, maintaining employee records, addressing budgetary matters, handling accounts payable and receivable, and other aspects of the operation of the Public Mobile business. [*Id.* at 19-20 ¶¶26, 29, 31-32]. He performed all this work on behalf of Public Mobile's owners, Defendant Ramos and Maritza Ramos, at the same time that he was co-owner and manager of Action Rentals. [*Id.* at 15 ¶3, 19 ¶26].

4

This arrangement continued through March 2011.  At that time, Plaintiff stopped working at his day job for Action Rentals, and his night job at Public Mobile, when he began working for another Ramos entity – Defendant Sante.  That Defendant is owned by Defendant Ramos, his wife Maritza, and two other co-owners.  Defendant Ramos at all relevant times was the director and manager of Sante.  He exercised daily control over Sante's operations, including the supervision of Sante's managerial employees, one of whom was Plaintiff.  [*Id.* at 1¶¶2-4].  In contrast, he did not have operational or employee supervision for the other related entities.  [*Id.* at 6 ¶30].

Defendant Sante's operations are not inter-related with the other entities that Plaintiff previously worked at.  Though Sante would use Action Rentals for movement of containers and rental of equipment, Sante would pay for such costs just like any other customer.  The same was true if Sante used any storage facilities maintained by Public Mobile.  All these entities also maintained separate banking and work records, separate locations, and separate management structures.  [*Id.* at 6-7 ¶¶31-35].

Plaintiff's employment with Sante started when Plaintiff was tasked with managing Sante's Nicaragua division.  Sante is in the business of providing container cargo shipping to Haiti and Central America.  Plaintiff became responsible for the entire Nicaraguan operation, including all office work, employee hiring and supervision, procurement, promotion, licensing, and all other matters that involved running the Nicaragua office.  He traveled regularly to Nicaragua from that point forward.  [*Id.* at 3-4 ¶¶10-13].

Plaintiff had proposed the idea to Defendant Ramos months earlier.  He had experience with Nicaraguan freight operations in his past employment.  [D.E. 58-10 at 163-66; 177-178].  He became the "Latin American Executive" with an annual salary of $40,000 per year plus benefits and was placed in charge of the entire Nicaragua business plan – which was his creation from the start.

Plaintiff testified, however, that even though the Nicaraguan operation was his idea, the tasks he performed were at the direction of Ramos and only on his authority.  [*Id.* at 175-77].  He denied having any hiring or supervisory responsibilities or performing any other duties that did not involve implementing Ramos's instructions.  He was only verifying that those instructions were being carried out without making any kind of decisions.  [*Id.* at 180-184].  He did travel once or twice a month to Nicaragua during a five-month period.

Problems arose, however, by June 2011 when Ramos raised questions as to why Plaintiff was not doing what he claimed he was going to do.  Though responsibilities were taken away to help Plaintiff succeed at that point, Plaintiff failed to accomplish what he said he would do when he opened the Nicaraguan operation for Sante.  He was then terminated in July 2011.

After his termination, Plaintiff filed this lawsuit in September 2011, seeking overtime wages for his work at the Ramos entities' Action Rentals and Public Mobile through March 2011, and then for work performed at Sante from March through July 2011.  He also seeks unpaid wages, commissions and bonuses that he claims he was owed and not paid for his work during that time period.

6

The pending motion for partial summary judgment seeks a dispositive pre-trial ruling that (1) FLSA coverage (both enterprise and individual) exists for the relevant period as to all Ramos entities and corporate Defendants, (2) Plaintiff was Defendants' employee and not an independent contractor, (3) the corporate Defendants were joint employers of Plaintiff for the relevant time period, and (4) Defendant Ramos was Plaintiff's individual employer under the FLSA for all relevant time periods.

Defendants' response takes issue with each of these contentions except individual coverage applying for Plaintiff's work at Sante, his status as an employee (not an independent contractor) for every Defendant but Public Mobile, and Defendant Ramos's status as an individual employer for Sante.  [D.E. 60].  Defendant argues, however, that enterprise coverage has not been established as to any Defendant, that Defendant was an independent contractor during his time working with Public Mobile because he was paid with a 1099, ran the company on his own, and could determine his own hours of operation, that the corporate Defendants were never joint employers because each was completely self-sufficient and independent, and that Defendant Ramos was not an individual employer as to Port of Miami, Public Mobile, or Action Rentals.

We will address each issue separately.

## II.   ANALYSIS

### A.   *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a

7

matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1).  "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986).  Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are

"implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.  In making this determination, the Court must decide which issues are material.  A material fact is one that might affect the outcome of the case.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  The Court must also determine whether the dispute about a material fact is indeed genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id.*; *see, e.g., Marine Coatings of Ala., Inc. v. United States,* 932  F.2d 1370, 1375 (11th Cir. 1991).

### B.    *Joint Enterprise Coverage*

The FLSA requires an employer to pay one-and-one-half times the regular rate of pay to each employee for all time worked in excess of forty hours in a week, so long as that employee is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or the production of goods for commerce." 29 U.S.C. § 207(a).  Likewise, the FLSA requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in

commerce or in the production fo goods for commerce, wages at the [rate of $7.25 an hour]." 29 U.S.C. § 206(a)(1). An employee may establish a claim for overtime and minimum wage compensation under the FLSA by establishing either individual or enterprise coverage. *Scott v. K.W. Max Invs., Inc.,* 256 F. App'x 244, 247 (11th Cir. 2007).

Here, Plaintiff seeks to establish FLSA jurisdiction over each corporate Defendant based on enterprise coverage as joint employers. To establish enterprise coverage, a plaintiff must demonstrate that his employer is an "enterprise engaged in commerce or the production of goods for commerce." *See* 29 U.S.C. § 207(a)(1); *Polycarpe v. E&S Landscaping Serv., Inc.,* 616 F.3d 1217, 1220-21 (11th Cir. 2010). The FLSA defines an enterprise "engaged in commerce or in the production of goods for commerce" as an enterprise that has two or more employees who are directly engaged in commerce or that has employees handling goods or materials that have been moved in commerce. The operative statute specifically defines an "enterprise" as one that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A).

10

The Code of Federal Regulations provides further guidance:

> An enterprise . . . will be considered to have employees engaged in commerce or in the production of goods for commerce, including the handling, selling, or otherwise working on goods that have been moved in commerce by any person if . . . it regularly and recurrently has at least two or more employees engaged in such activities.  On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238.

Therefore, a single employee who is directly engaged in commerce is not enough. Nor is it enough to have two or more employees who only engage in commerce on isolated occasions.  The statute requires instead that two or more employees (i) recurrently engage in commerce or the production of goods for commerce, or (ii) recurrently handle materials that previously moved through interstate commerce.

In this case, Plaintiff's summary judgment argument on enterprise coverage rests largely on the third argument raised in the motion; namely, whether the corporate Defendants must be deemed joint employers as a matter of law during the relevant time period.  That is because Plaintiff never addresses whether the second element required of enterprise coverage – annual gross volume of sales in excess of $500,000 – could apply to any individual corporate Defendant.  Defendants take the position that only Sante meets that statutory threshold.  Defendants argue that the record lacks any compelling evidence of the earnings for the other three corporate Defendants.  [D.E. 60 at 14].

But Plaintiff's entire argument for enterprise coverage rests on a different theory that assumes that none of the corporate Defendants meet the statutory threshold. Instead, Plaintiff contends, because they are combined as a "joint employer" for FLSA purposes, enterprise coverage can lie. *See, e.g., Dunlop v. Mother Hubbard's Kitchen, Inc.,* 418 F. Supp. 34, 37 (E.D. Mo. 1976). We will thus turn to the joint employer argument within this enterprise coverage discussion. If Plaintiff cannot show that the corporate Defendants must be treated as a joint employer as a matter of law, then summary judgment cannot be granted on the enterprise coverage issue.

A joint employment relationship exists "where a single individual stands in the relation of an employee to two or more persons at the same time." *Gonzalez-Sanchez v. Int'l Paper Co.,* 346 F.3d 1017, 1020 (11th Cir. 2003). Under the FLSA, "a worker can be economically dependent on, and thus jointly employed by, more than one entity at the same time." *Id.* at 1021. In determining whether a joint employment relationship exists courts consider the following factors: (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire or modify the worker's employment conditions; (4) the power to determine the worker's pay rates or methods of payment; (5) the preparation of payroll and payment of worker's wages; (6) the ownership of the facilities where the work occurs; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities. *Antenor v. D&S Farms,* 88 F.3d 925, 932 (11th Cir. 1996).

12

To make these determinations, the Court must "'look beyond formalistic corporate separation to the actual pragmatic operation and control, whether unified or, instead, separate as to each unit.'" *Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 267 (11th Cir. 2001) (quoting *Donovan v. Grim Hotel Co.,* 747 F.2d 966, 970 (5th Cir. 1984)). The relevant inquiry for the Court, then, is a flexible one, but the Court must find the evidence demonstrates that the two businesses at issue (1) performed related activities, (2) through a unified operation or common control, and (3) for a common business purpose. *See, e.g., Donovan v. Easton Land & Dev., Inc.,* 723 F.2d 1549, 1551-53 (11th Cir. 1984).

Plaintiff's argument on this issue rests largely on his own testimony that the corporate Defendants acted in concert with respect to the entire operation of the Ramos-owned facilities. Sante would use Action Rentals to move containers and for rental equipment utilized in its ports. Sante also used Public Mobile for storage needs it had at the Miami River terminal, and paid Port of Miami for the operations at the terminal. Plaintiff also cites the fact that he wore multiple hats at the same time for Defendants Public Mobile and Action Rentals. Public Mobile's business involved rental of storage and moving trucks, while Action Rentals rented construction equipment. Both were located at the same location at the terminal and used the same front desk, during the same hours, that Plaintiff manned under the control of Steve Ramos.

Plaintiff's motion does little to show, however, that this testimony has been corroborated by Defendants' own witnesses. The record shows instead that those witnesses testified that the principal managers of each entity disclaimed involvement

13

in the recruiting, record maintenance, payroll, and operations of the other Defendants. The deposition and affidavit testimony in the record supports the conclusion that the trier of fact could find that each of the four companies was self-sufficient and independent of each other, performing different functions that complemented each other but did not fully integrate each other's operations. This record evidence thus reveals a sufficient genuine issue of fact as to the level of control and integration that existed at the Miami River terminal facility, thus precluding summary judgment on the joint employer relationship.

To be sure, Plaintiff's strongest case for a joint employer arrangement relates to his work for Action Rentals in the daytime hours and Public Mobile at night. That arrangement is undoubtedly the most important given the number of hours that he would have been working if his testimony is taken at face value. Defendants have confirmed that the same person, Steve Ramos, managed operations at both Action Rentals and Public Mobile. The record also shows that Defendant Ramos maintained ownership interests in each company. There is thus strong evidence in the record to support Plaintiff's contention that these entities, at least, must be treated as joint employers for Plaintiff's employment through March 2011.

The problem, however, is that there is still record evidence that, if believed, could support a finding to the contrary, as unlikely as that may be. Moreover, even if we would assume that these two entities were indeed joint employers during this relevant time period, there is still no tangible evidence in the record to convincingly find as a matter of law that the joint enterprise of Action Rentals and Public Mobile

yields a gross annual sales volume in excess of $500,000. The evidence on that important issue is quite sparse, and at least has not been sufficiently identified in Plaintiff's motion or reply. Contrary to the conclusory statements in each filing that the $500,000 threshold has been satisfied, Plaintiff failed to point to uncontrovertible record evidence with any specificity that, at least for Action Rentals and Public Mobile, a joint employment relationship as to these entities produces without doubt the minimum statutory threshold. The generic argument instead appears to rely upon the inference that *all* of the Defendants together yields the necessary threshold, but that is clearly not the case when one focuses on only these two entities. And we must do so because there is, at minimum, a genuine issue of material fact as to Sante's status as a joint employer with these other entities.

That finding is dispositive for summary judgment purposes on the enterprise coverage issue, even apart from the consideration of whether sufficient evidence demonstrates that two or more employees were handling goods or materials used in interstate commerce. Even that showing has not been convincingly demonstrated in this record, beyond Plaintiff's own inferences and conclusions. We generally do not rely on inferences or conclusions for summary judgment purposes. But we need not go even that far, because it is clear that the annual sales volume threshold has not been established as a matter of law.

Accordingly, the motion is Denied as to any argument over enterprise coverage in general, or joint employer status in particular.

C.    *Individual Coverage*

In contrast to the showing required for enterprise coverage, Plaintiff has demonstrated, with little opposition, that individual coverage exists with respect to Plaintiff's employment with Defendant Sante after March 2011.  An employee is subject to individual coverage if he is directly and regularly "engaged in" interstate commerce.  *E.g., Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006).  As *Thorne* explains, indirect or sporadic involvement in commerce is insufficient:

> [F]or an employee to be "engaged in commerce" under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel.

*Id.* (citing *McLeod v. Threlkeld,* 319 U.S. 491, 493–98 (1943)).

To survive summary judgment on this issue, Plaintiff must produce admissible evidence that he (1) worked directly for an instrumentality of interstate commerce, or (2) regularly used the instrumentalities of interstate commerce.  *See Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1316 (11th Cir. 2011).

The record is uncontroverted that Plaintiff regularly traveled to Nicaragua once he began working for Sante in connection with the opening of a regular base of operations in that country.  Plaintiff was responsible for opening and operating that facility starting in March 2011 through July 2011, when he was terminated for

allegedly failing to meet his obligations in managing that project.  But there is no dispute that he was using instrumentalities of commerce in this position by regularly traveling in interstate/foreign commerce to perform his job duties.  Moreover, Sante pointed out that Plaintiff was coordinating Nicaraguan operations from his office in Miami through a computer network system that even allowed him to monitor the office in Nicaragua by video.  That testimony was corroborated in part by Plaintiff.  Hence, in this respect as well Plaintiff was regularly engaging instrumentalities of interstate commerce in his employment.  He was thus, by definition, engaged in activities constituting interstate commerce in his new position with Sante.  *See Thorne,* 448 F.3d at 1266 ("The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce.").

Defendants' response in opposition to the motion never challenged Plaintiff's argument that individual coverage was established for his work at Sante.  Therefore, the record demonstrates without question that Plaintiff has satisfied his burden on summary judgment of showing that individual coverage must be found for the time period of March 2011 through July 2011 as against Defendant Sante.

Plaintiff's motion also suggested that individual coverage would lie for the other named Defendants, but on that issue the record shows otherwise.  Although the motion refers to testimony that Plaintiff was regularly traveling to Nicaragua even prior to his full-time position at Sante, the Court's review of the record does not reveal incontrovertible evidence supporting that suggestion.  To the contrary, Plaintiff's own

17

deposition testimony repeatedly emphasized that the primary job functions he performed prior to March 2011 involved the front desk operations at Action Rentals and Public Mobile.  His testimony does not support a finding as a matter of law that individual coverage would lie for that primary job function.  And Plaintiff's motion tackles this narrower issue in only cursory fashion.  Therefore, to the extent the motion seeks summary judgment establishing individual coverage for any time period prior to March 2011, that aspect of the motion must be denied.

Accordingly, the motion for summary judgment is Granted only with respect to individual coverage against Defendant Sante beginning in March 2011.  The motion is Denied in all other respects with regard to any individual coverage under the FLSA.

### D.   _Independent Contractor Status_

The next issue raised in the motion that we must consider is the argument that Plaintiff has shown conclusively that he was an "employee" for each of the Defendant companies during the time he worked there, and that Defendants' denials of that allegation based on an independent contractor theory must be rejected as a matter of law.

Defendants' response to this argument was limited.  Defendants Port of Miami, Action Rentals, and Sante made no argument in opposition to the motion that Plaintiff was an employee for those entities at different times.  Thus, as to these Defendants, there is no basis in the record not to grant the motion.

Defendants' response did challenge, however, the motion with respect to Plaintiff's work for Defendant Public Mobile.  [D.E. 60 at 18].  This Defendant relied

upon the undisputed fact that Plaintiff was paid through a 1099, not a W2, as he requested, and second that he had almost no supervision at the facility when he was working for Public Mobile.  He could determine his hours of operation and could make his own closing time.  Moreover, the job was temporary in nature.  Thus, there is a triable issue based on these circumstances regarding whether Plaintiff can establish he was in fact an employee with Public Mobile for FLSA purposes, as opposed to an independent contractor.  [*Id.*]

The FLSA provides protections for "employees," but not independent contractors. *See, e.g., Freund v. Hi-Tech Satellite, Inc.,* 185 F. App'x 782, 782 (11th Cir. 2006).  The term "employ" in the FLSA is defined very broadly, and has been interpreted to mean "suffer or permit to work."  *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992); *see* 29 U.S.C. § 203(g).  In determining whether an individual worker is an employee or an independent contractor, courts examine "the 'economic reality' of whether the putative employee is economically dependent upon the alleged employer." *Harrell v. Diamond A Entm't, Inc.,* 992 F. Supp. 1343, 1348 (M.D. Fla. 1997) (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947); *Aimable v. Long & Scott Farms,* 20 F.3d 434, 439 (11th Cir. 1994)).  The determination of employment status is ultimately a question of law for the Court absent a dispositive factual dispute.  *See Antenor,* 88 F.3d at 929.

The so-called "economic realities" analysis focuses on six factors:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship; [and]

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Freund,* 185 F. App'x at 783 (citing *Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1535 (7th Cir. 1987)).  No one factor is determinative and "the weight of each factor depends on the light it sheds on the [putative employee's] economic dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case[.]" *Antenor,* 88 F.3d at 932-33.

Focusing then on the application of these principles to Plaintiff's work for Public Mobile, there is no genuine issue of fact that almost each of these factors conclusively shows that Plaintiff served as an employee for that entity.  There has been no showing by this Defendant whatsoever that Plaintiff shared in any profit or loss, that he invested any money or property or even know-how in the company itself, that he required special skill in the process, or that he performed any unique service that was

integral to the operation of the storage business.  As Defendant Public Mobile has not met its burden to rebut Plaintiff's arguments and testimony on these factors, the scale heavily tilts in Plaintiff's favor on this issue.

The arguments that Public Mobile presents are neither compelling nor dispositive.  Defendant points to the nature of the position as supporting independent contractor status because the decision when to close the storage facility was entirely Plaintiff's.  Plaintiff certainly disputes this, but we assume it to be true for summary judgment purposes.  But even with that assumption in Defendant's favor, the overwhelming other evidence in the record on this issue requires us to give it no weight when faced with the countervailing undisputed fact that Plaintiff's work was conducted entirely on Defendant's premises.  That is far more significant for these purposes than the option or discretion Plaintiff purportedly had to close the storage facility at different times.  *See, e.g., Berrocal v. Moody Petroleum, Inc.,* 2009 WL 455448, at *6-7 (S.D. Fla. Feb. 22, 2009) (entering summary judgment finding plaintiff an employee in part because no question she performed work entirely on defendant's premises; contrasting *Murray v. Playmaker Servs., LLC,* 512 F. Supp. 2d 1273 (S.D. Fla. 2007) (finding worker independent contractor where she conducted her business activities from her home and decided on her own where to meet clients)); *Harrell,* 992 F. Supp. at 1349 ("The mere fact that [defendant] has delegated a measure of discretion to its dancers does not necessarily mean that its dancers are elevated to the status of independent contractors."); *Mednick v. Albert Enters., Inc.,* 508 F.2d 297, 303 (5th Cir. 1975) ("An employer cannot saddle a worker with the status of independent contractor,

thereby relieving itself of its duties under the F.L.S.A., by granting [him] some legal powers where the economic reality is that the worker is not and never has been independently in the business which the employer would have [him] operate.").

The same is true with the argument that the method of tax treatment accorded Plaintiff by Public Mobile, specifically payment through 1099 and without W2 withholding at his request, supports non-employee status. That argument has been thoroughly and repeatedly rejected. *See, e.g., Harrell,* 992 F. Supp. at 1353. That is also the case with the contention that Defendant merely agreed to Plaintiff's request to treat him as an independent contractor. *See, e.g., Wilson v. Guardian Angel Nursing, Inc.,* 2008 WL 2944661, at *11 (M.D. Tenn. July 31, 2008) (mere fact that an independent contractor's agreement was executed does not necessarily mean that such a relationship existed between the plaintiff and defendant for purposes of the FLSA).

Finally, the temporary nature of the position (a fact which is unclear in the record as to the actual intended duration of this arrangement) is also easily discounted. *See, e.g., McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (mere fact that workers are transitory is not determinative of employee status because "[e]ven if the freedom to work for multiple employers may provide something of a safety net, unless a worker possesses specialized and widely-demanded skills, that freedom is hardly the same as true economic independence"). We see nothing in this record to show that the temporary nature of the position, even if true, overcomes the clear and convincing showing of economic dependence that we find from the other relevant factors.

Therefore, we readily find that there is no genuine issue of material fact on the question of whether Plaintiff must be deemed an "employee" of Public Mobile, as is the case without dispute as to the other named corporate Defendants. We find that no reasonable juror could find that Plaintiff was not an "employee" of Public Mobile during the time that he worked for that entity. The issue for trial is whether in fact he worked for that entity separate and apart from his work for any other Ramos-owned entity. And the issue of fact is whether or not he is owed any overtime wages at all by Public Mobile or any other entity named in this case. Any independent contractor defense, however, cannot be presented as a matter of law.

### E.   *Individual Liability of Bruno Ramos as an "Employer"*

Plaintiff finally contends that Defendant Ramos, as the owner and manager of each of the corporate Defendants that Plaintiff worked for, is an "employer" within the meaning of the FLSA. An employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Moreover, "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (citing cases). The Eleventh Circuit has further clarified that "in order to qualify as an employer for this purpose, an officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel*, 803 F.2d at 638). This issue

23

is a question of fact to be determined in light of all of the circumstances. *See Donovan v. American Leader Newspapers, Inc.*, 524 F. Supp. 1144, 1146 (M.D. Fla. 1981) (citing *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668 (5th Cir. 1968)).

Defendants have presented record evidence to establish, in multiple ways, that Ramos was not in operational control over the activities of Port of Miami, Action Rentals, or Public Mobile.  The affidavit and deposition testimony in the summary judgment record supports that contention, which if believed would relieve Ramos of individual liability on the overtime claims against these entities.  We acknowledge, however, that Plaintiff has presented direct and circumstantial evidence to the contrary, which if believed would establish personal liability against Ramos.  But we find for summary judgment purposes that the record is not uncontrovertible on this question and leave the final determination of Ramos's individual liability to the trier of fact.

There has been no dispute, however, that Defendant Ramos is personally liable to the extent that FLSA liability is found as against Defendant Sante.  Defendant Ramos has not challenged the motion in this respect and has impliedly conceded that, given his day-to-day operational control over Sante in addition to his ownership interest, Ramos is an individual "employer" of Plaintiff for his work at Sante.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment [D.E. 53] is **GRANTED** in part and **DENIED** in part as set forth above.  The undisputed record evidence establishes that,

with respect to his work for Defendant Sante Shipping, Plaintiff is individually covered under the FLSA and employed by both Defendant Sante Shipping and Defendant Bruno Ramos, jointly and individually.   The undisputed record evidence also establishes that Plaintiff was an employee, and not an independent contractor, with respect to Defendants Port of Miami, Action Rentals, Public Mobile, and Sante Shipping.  Accordingly, the motion is Granted with respect to these discrete findings.

There are, however, genuine issues of material fact as to enterprise coverage with respect to Defendants Port of Miami, Action Rentals, and Public Mobile.  There are genuine issues of material fact as to joint employer liability with respect to all Defendants.  And there are also genuine issues of material fact with respect to Defendant Bruno Ramos's individual liability with respect to Defendants Port of Miami, Action Rentals and Public Mobile.  Accordingly, the motion is Denied as to these issues.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of March, 2013.

/s/   *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

25